UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAFECO INSURANCE COMPANY
OF AMERICA,

                Plaintiff,

v.

CPI PLASTICS GROUP, LTD., et al.,

                Defendants.

_____/

CIVIL ACTION NO. 07-14135

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**   **RECOMMENDATION**:

I recommend that Defendants CPI Plastics Group, Ltd. and CPI Plastics Group, Inc.'s Motion to Dismiss and/or for Summary Judgment be denied as to Count I of the Complaint. I further recommend that Defendants' Motion be granted as to Count II of the Complaint. I further recommend that Defendants' Motion be granted, in part, as to the punitive damages claim in Count III of the Complaint, and denied as to the balance of Count III.

**II.**   **REPORT**:

    **A.**   **Procedural History**

Plaintiff filed its Complaint on October 1, 2007. Defendants filed their Answer on December 17, 2007. The instant Motion for Summary Judgment and/or to Dismiss was filed on April 3, 2008, and referred to the magistrate judge on April 21, 2008. Plaintiff responded to the Motion on April 24, 2008. Defendants filed a Reply Brief on May 5, 2008. The Motion was brought on for hearing on May 28, 2008, and taken under advisement.

**B.    Applicable Law and Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).  The court is not required or permitted, however, to judge the evidence or make findings of fact.  Id. at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  Id. At 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted); <u>see</u> <u>Celotex</u>, 477 U.S. at 322-23; <u>Matsushita</u>, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. <u>Lucas v. Leaseway Multi Transp. Serv., Inc.</u>, 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), <u>aff'd</u> 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find the plaintiff." <u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>Cox v. Ky. Dep't of Transp.</u>, 53 F.3d 146, 150 (6th Cir. 1995).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief may be granted. A complaint need not contain detailed factual allegations. Nonetheless, a plaintiff's obligation to provide the "grounds" of his entitlement to relief, as required by Fed.R.Civ.P. 8(a)(2), requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Rather, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that the allegations are true.  Bell Atlantic Corporation v. Twombly, 127 S.Ct. 155, 164-65 (2007).  The pleading must contain something more than a statement of facts which creates a mere suspicion of a legally cognizable right of action.  The court should proceed on the assumption that all the allegations of the complaint are true.  A well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not countenance dismissal based on a judge's disbelief of the plaintiff's factual allegations.  Id.

## C.    Factual Statement

The essential facts of the case are undisputed.  Plaintiff, Safeco Insurance Company of America ("Safeco") filed this action as subrogee of Gregory and Rachel Shepard under a contract of insurance covering property damage to their residence.  The Shepards constructed an exterior deck on their home in 2005.  They used EON planks manufactured by Defendants (collectively designated "CPI").  The EON product was purchased by Shepards from a local hardware outlet.[1]  Construction of the deck was completed on or before June 10, 2005.  The Shepards placed an outdoor "chimnea" fireplace on the deck.  On February 28, 2006, while the fireplace was in use, the EON deck material caught fire.  The fire spread, despite Mr. Shepard's effort to extinguish it with a garden hose.  The local fire department responded to the homeowners' 911 call, but the residence was substantially destroyed.  No personal injury, however, resulted from the fire.

---

[1]  This fact was not alleged in the Complaint, but is asserted in Plaintiff's Response to the instant Motion, and not contested by Defendants.

4

The Shepards submitted a loss claim under their insurance policy with Safeco. Plaintiff paid the loss claim in the sum of $460,149.12. Safeco, as subrogee of its insureds, seeks to recover from Defendants on the theory that the EON planks were made of highly flammable plastic polymers which liquified, ignited and fueled a runaway combustion.

**D.    Analysis**

Count I of Safeco's Complaint seeks recover on a theory of negligence/implied warranty in tort. Count II seeks recovery under the Uniform Commercial Code for breach of express and implied warranty. Count III alleges that Defendants violated the terms of Michigan's Consumer Protection Act ("MCPA"), M.C.L. §445.900 et seq. The MCPA count included a prayer for punitive damages.

**1.    Count I**

Count I of the Complaint asserts a products liability claim in tort, on the theory that CPI breached its duty under Michigan law to manufacture and supply products that were safe and reasonably fit for their intended use. Plaintiff variously alleges that the plastic product in question "burned readily and caused run way (sic) combustion to occur when confronted with reasonably anticipated heat sources; that, once ignited, the product was susceptible to accelerated heat release, which caused the "dripping and dropping of flaming materials" within 2.5 minutes; and that the planks "supported and sustained flame even after an ignition source was removed." Safeco asserts that the properties of Defendants' product posed a risk of fire damage far in excess of that associated with similar products, or wood, such that it was "not fit for its intended purpose." Finally, Plaintiff alleges that Defendants failed to warn consumers of the dangerous propensity of the product to burn

out of control. Based upon the foregoing alleged breaches of duty, Safeco seeks recovery of the amounts paid by it under its policy as a result of the damage to the home and personal property of the Shepard family.

CPI argues that Safeco may not recover damages on a theory sounding in tort because its damages are "solely economic in nature" and "arise from the sale of a product . . .." (Defendants' Brief, Page 4). Defendants posit that the Uniform Commercial Code ("UCC") (adopted by Michigan in 1964) "governs all contract disputes arising from transactions for the sale of 'goods'". It is undisputed that the EON product at issue in this case is a manufactured, movable good within the meaning of the UCC.

CPI asserts that the "economic loss doctrine" abolishes all tort liability and limits Plaintiff to remedies sounding in contract. They cite <u>Niebarger v. Universal Cooperative, Inc.</u>, 439 Mich. 512, 521; 486 N.W. 2nd 612 (1992) in which the court declared that:

> Where a purchaser's expectations in the sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses.

439 Mich. 512, 521; 486 N.W. 2nd 612 (1992).

A federal court sitting in diversity must apply the substantive law of the forum state. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938). In Michigan, the existence of a legal duty is a question of law. <u>Beaudrie v. Henderson</u>, 465 Mich. 124 (2001). In following the mandate of <u>Erie v. Tompkins</u> to apply the substantive law of the forum state, a federal court "must follow the decisions of the state's highest court when that court has addressed the relevant issue." <u>Talley v. State Farm Fire and Casualty Co.</u>, 223 F.3d 323, 326 (6th Cir. 2000). When the state supreme court has not yet decided a particular issue, the federal

court must anticipate how that court would rule."  Imperial Hotels Corp. v. Dore, 257 F.3d 615, 620 (6th Cir. 2001) (quoting Bailey Farms, Inc. v. NOR-AM Chem. Co., 27 F.3d 188, 191 (6th Cir. 1994.  In doing so, the court must consider decisions of a state's intermediate appellate courts unless it is "convinced by other persuasive data that the highest court of the state would decide otherwise.  West v. AT&T Co., 311 U.S. 223, 237 (1940); see also, Comm'r v. Bosches Estate, 387 U.S. 456, 465 (1967).  This court is bound to apply state law as it currently exists, and the adoption of innovative theories of recovery is inappropriate in the exercise of diversity jurisdiction.  Solomon v. Walgreen Co., 975 F.2d 1086, 1089 (5th Cir. 1992).  Logic dictates that innovation theories of defense must also be rejected.

The Michigan Supreme Court established the "economic loss doctrine" in this state in Niebarger v. Universal Cooperatives, Inc., 439 Mich. 512 (1991).  In that case, dairy farmers asserted claims of breach of express warranty, breach of implied warranty, and negligence against the designers of milking equipment which they had purchased.  They sought monetary damages for injury to their animals, and lost milk production and profits allegedly resulting from defects in the equipment.  The trial court granted defendant's motion for summary disposition, and the Michigan Court of Appeals affirmed on the theory that plaintiff's remedies "laid (sic) exclusively within the UCC and were subject to the four year limitation period which began running upon delivery of the milking systems."  The Michigan Supreme Court considered whether Plaintiff's could avoid the consequences of the UCC limitation period by pleading claims sounding in tort.  It determined that they could not.

Where, as here, the claims arise from a <u>commercial transaction</u> in goods and the plaintiff suffers only economic loss, our answer is "no" - such claims are barred by the economic loss doctrine.

The economic loss doctrine, simply stated, provides that "'[w]here a purchaser's expectations in a sale are frustrated because the product is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses'". <u>This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.</u>

439 Mich. 512, 520 (1992) (emphasis added). The holding of the case is succinct. "Accordingly, we hold that where a plaintiff seeks to recover for economic loss caused by a defective product <u>purchased for commercial purposes</u>, the exclusive remedy is provided by the UCC, including its statute of limitations." 439 Mich. at 427-28 (emphasis added).

Immediately following its holding, the court further articulated its policy basis.

A contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the legislature in adopting the UCC. The code represents a carefully considered approach to governing "the economic relations between suppliers and consumers of goods." If a <u>commercial purchaser</u> were allowed to sue in tort to recover economic loss, the UCC provisions designed to govern such disputes, which allow limitation or elimination of warranties and consequential damages, require notice to the seller, and limit the time in which a suit must be filed, could be entirely avoided. In that event, Article 2 would be rendered meaningless and, as stated by the Supreme Court in <u>East River</u>, "contract law would drown in a sea of tort."

Rejection of the economic loss doctrine would, in effect, create a remedy not contemplated by the legislature when it adopted the UCC by permitting a potentially large recovery in tort for what may be a minor defect in quality. On the other hand,

> adoption of the economic loss doctrine will allow sellers to predict with greater certainty their potential liability for product failure and to incorporate those predictions into the price or terms of the sale.

439 Mich. at 428 (emphasis added).

Since Niebarger, various panels of the Court of Appeals of Michigan have considered the sweep of the economic loss doctrine. Several cases have seemingly broadened its application well beyond the plain meaning of the Supreme Court language.

Defendants rely heavily upon Sherman v. Sea Ray Boats, Inc., 251 Mich.App. 41 (2002). In that case, the purchaser of a recreational power boat sued the manufacturer based upon the deterioration of fiberglass encased wooden structural members, first discovered after 12 years of use. The buyer alleged that the deterioration frustrated her "legitimate expectation that [the boat's] useful life would exceed 25 years." Among the several counts of the complaint were claims of "negligence" and "design defect." 251 Mich.App. at 43. The consumer plaintiff, who had purchased the boat from a dealer, sought an award of money damages from the manufacturer sufficient to repair the alleged defects. There was no mishap, personal injury or damage to other property resulting from the condition of the vessel. The issue before the Michigan Court of Appeals was whether the plaintiff's tort claims were precluded by the economic loss doctrine.

Despite the Michigan Supreme Court's use of the terms " commercial transaction", "commercial purchaser" and "product purchased for commercial purposes" in Niebarger, the Michigan Court of Appeals determined that the doctrine applied to consumer purchases as well, despite any disparity in bargaining power. The court was drawn to that result by its view that dicta in Niebarger could be read to support the position of either of the parties

before it. The <u>Sherman</u> court juxtaposed the statement in <u>Niebarger</u> that "a consumer should not be charged with bearing the risk of physical injury from a product" against the observation that "a consumer may be charged with the risk that a product will not match his economic expectations unless the manufacturer agrees to it." Proceeding from that perceived inconsistency, the <u>Sherman</u> court embarked upon an analysis which lead it to decide that the Plaintiff's tort actions were precluded "by principles of Michigan law that evolved into the economic loss doctrine . . .." 251 Mich.App. at 46.

The <u>Sherman</u> court found support for that conclusion in the decision of the Michigan Supreme Court in <u>Hart v. Ludwig</u>, 347 Mich. 559 (1956). In that case, the defendant was alleged to have abandoned his oral contract to provide care and maintenance to the plaintiff's orchard. His alleged omissions included the failure to prune, remove shoots, fertilize and protect against destructive animals. The plaintiff alleged that such omissions constituted negligence. The Supreme Court disagreed.

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, <u>the violation of which is not alleged</u>. What we are left with is defendant's failure to complete his contracted-for performance. <u>This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs.</u>

<u>Hart</u>, 347 Mich. at 565-66. The <u>Sherman</u> court derived from that language that "[t]he analysis of whether a duty arose that was separate and distinct from a contractual duty was not premised on or affected by the relationship of the parties. Exactly how that quite correct observation supports the conclusion that the Michigan Supreme Court did not intend

10

its clearly stated restriction of the economic loss doctrine to commercial transactions simply escapes this writer.

Setting aside, for the moment, the <u>Sherman</u> court's determination that the economic loss doctrine applies to consumer transactions, it is important to note that the decision hinged primarily on the issue of whether the defendant boat manufacturer owed the plaintiff purchaser any duty beyond those imposed by reason of the contract of sale.[2]  The <u>Sherman</u> court observed that the plaintiff was seeking to recover only the costs of repair to the vessel, and that there were no allegations of physical harm to persons or tangible property resulting from its allegedly defective condition.

> While plaintiff's allegations arguably make out a claim for "negligent performance" of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent duty distinct from the duties arising out of the contractual relationship.
>
> *          *          *
>
> . . . Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established.  In order to make this difficult distinction, an analysis of whether the omission is based on misfeasance or nonfeasance occurs.  If the omission is one of nonfeasance, a failure to act, the action lies in contract only.

<u>Sherman</u>, 251 Mich.App. at 52 (citation omitted).  The court relied upon <u>Rinaldo's Const. Corp. v. Michigan Bell Telephone Co.</u>, 454 Mich. 65 (1997) in analyzing the

---

[2]  In fact, there was no direct contractual relationship at all between the purchaser and the manufacturer of the boat.  The consumer plaintiff purchased the vessel from a dealer, K & M Boat Company, which was dismissed from the litigation at the trial level.  251 Mich.App. at 42.

misfeasance/nonfeasance distinction. That case, in turn, relied upon the following passage from Prosser and Keaton:

> *Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things.* Generally speaking, there is a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things. Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a pre-existing obligation or duty to avoid harm when one acts.

454 Mich. at 84 (quoting Prosser and Keaton, <u>Torts</u>, §92, pp. 656-657).

Relying upon the decisions of the Michigan Supreme Court in <u>Hart v. Ludwig</u>, 347 Mich. 559 (1956) and <u>Ferrett v. General Motors Corp.</u>, 538 Mich. 235 (1991), the <u>Sherman</u> court determined that the boat manufacturer owed the purchaser no duty beyond that imposed by the terms of the contract.

> Cases recognizing a right to maintain an action in tort arising out of breach of contract by the defendant, generally involve a separate and distinct duty imposed by law for the benefit of the plaintiff that provides a right to maintain an action without regard to whether there was a contractual relationship between the plaintiff and the defendant . . ..

<u>Sherman</u>, 251 Mich.App. at 48 (quoting <u>Ferrett</u>, 438 Mich. at 245-46).

The <u>Sherman</u> court determined that the purchasers negligence claim based on failure to warn, caution, and instruct, was a claim of "nonfeasance" for which there is no duty alleged that was separate and distinct from the claim of breach of contract. The court fruther decided that the boat purchasers tort claim could not be maintained because:

> . . ., even if Plaintiff could support a claim of negligence, any harm did not result in physical injury, but structural damage to the boat only. The nature of damages arises not from physical harm, but from loss of economic expectation in the product.

> Additionally, the overriding concern of the economic loss doctrine provides that where a plaintiff seeks damages for economic losses only, tort concerns with product safety no longer apply, and economic expectation issues prevail.

Sherman, 251 Mich.App. at 53-54.

In the case before this court is readily distinguishable from Sherman. The claim in Count I of the Complaint plainly implicates "tort concerns with product safety," and the harm alleged clearly resulted in physical injury to the Shepard's residence and its contents, as well as the loss of the deck itself. Michigan law certainly imposes a duty upon manufacturers to produce products which are reasonably safe when delivered. Graham v. Ryerson and Sons, 96 Mich.App. 480 (1980); MCL 600.2946. It provides for a "product liability action" based upon legal or equitable theories of liability for death or injury to persons "or damage to property caused by or resulting from the production of a product." MCL 600.2945(h) (emphasis added). Personal injury to a human being is not essential to a valid products liability claim in Michigan. See, e.g., Case v. Consumers Power Co., 463 Mich. 1 (2000).

CPI cites adequate case authority for the proposition that the economic loss doctrine in Michigan extends to property other than the product itself. Citizens Insurance Co. v. Osmose Wood Preserving, Inc., 231 Mich.App. 40 (1998); Quest Diagnostics Inc. v. MCI World Comm., Inc., 254 Mich.App. 372 (2002). In fact, that principle was acknowledged in Niebarger itself, and there is little doubt as to its validity. That is not to say, however, that the economic loss doctrine is the only body of law applicable to property losses. As stated above, it is quite clear that tort law also permits recovery for property damage in the absence of personal injury. Case, supra. Safeco's claim against CPI is different in

character from the claim addressed in <u>Sherman</u>. Plaintiff here does not merely allege the loss of the beneficial use of the EON deck. Rather, the claim in Count 1 is that the Defendant manufactured and sold an unsafe product, and that the dangerous properties of that product caused damage to property other than the product itself. Manufacturers are duty bound to design products that are safe for their intended or reasonably anticipated use. They are also liable in negligence for failure to warn users about dangers associated with a product's intended use, and even forseeable misuse. <u>Antcliff v. State Employees Credit Union</u>, 414 Mich. 624, 637-38 (1982). That duty extends to all users, and is not founded upon contract principles. Rather, it is a separate and distinct duty rooted in public policy. In placing its EON planks into the stream of commerce, Defendant assumed a general duty to ensure that they were reasonably safe. The sale of a product which does not meet that standard is malfeasance, and a tort claim will lie.

Ultimately, I am simply unwilling to conclude that the Michigan Supreme Court was careless in holding that the sweep of the economic loss doctrine was restricted to products "purchased for commercial purposes." While I acknowledge that the Michigan Court of Appeals decisions have applied the doctrine to consumer transactions, thus abandoning the clearly stated boundary, as well as eviscerating the freedom of contract and privity principles upon which it was explicitly based, I note that Defendant has cited no subsequent case from the Michigan Supreme Court which adopts or approves the extension. <u>Neibarger</u>, then represents the current substantive law of Michigan, and this court need not "anticipate" a contrary policy based on the holdings of the state's intermediate courts.

In any event, the case at hand is readily distinguishable from the case presented to the Michigan Court of Appeals in <u>Sherman</u>. The plaintiff there asserted a tort theory based

14

on nonfeasance, and claimed no damage other than the loss of beneficial use of the product itself (after 13 years of use without injury to persons or other property!). The Plaintiff in this case asserts a classic products liability claim in Count 1, alleging that Defendant manufactured and sold an unreasonably dangerous product which caused extensive damage to property other than the product itself. I am satisfied that the facts of the case at bar will support a tort based products liability claim.

This court reached a similar result in Republic Insurance Co. v. Braun Manufacturing Co., Inc., 960 F.Supp. 1247 (E.D. MI 1997). In that case, a homeowners insurer brought a subrogation action against the manufacturer of an allegedly defective ceiling fan. While the homeowners were absent, the fan's motor seized up and over-heated, causing ignition of a plastic fan blade. The flames spread to adjacent combustibiles and ceiling material, ultimately resulting in property damage in excess of $139,000.00. No personal injury was suffered. The insurance company compensated the homeowners for their losses, and became subrogated to any and all claims that the subrogors could assert against the manufacturer of the ceiling fan. The insurer filed a complaint in two counts. Count I alleged negligence and Count II asserted claims of breach of express and implied warrantee. The defendant moved for summary judgment on the theory that the product liability tort claims were barred by the economic loss doctrine. This court denied the motion.

> Tort law, and product liability law specifically, governs the relationship between a consumer and a manufacturer, where it is impractical or impossible for the parties to negotiate either the terms of a sale or each party's duty to the other. In this context, product liability law places a burden on the manufacturer - the party in the better position to avoid the harm of a defective product - to produce a safe product. In contrast,

15

contract law applies to commercial transactions, where the terms and conditions of a transaction can be negotiated to each party's satisfaction. Contract law operates on the premise that commercial actors, because of their ability to bargain for the terms of the sale, will be able to allocate the risks and costs of a product's potential performance.

960 F.Supp. at 1249-1250 (quoting <u>Detroit Edison v. NABCO, Inc.</u>, 35 F.3d 236 (6th Cir. 1994). Ultimately, the court determined that the purposes of tort law would be served by the assertion of a products liability claim, and that the economic loss doctrine did not apply. The same result is appropriate here. I recommend that Defendants' Motion be denied as to Count I of the Complaint.

## 2.    <u>Count II</u>

There is no doubt that Count II of the Complaint asserts a claim of breach of express and implied warranties under the UCC. Defendant maintains that the Plaintiff's claims are time barred under the applicable statute of limitations. I agree.

M.C.L.A. 400.2725(1) provides that "an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." M.C.L.A. 400.2725(2) provides as follows:

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

M.C.L.A. 400.2725(2).

16

Tender of delivery requires that a seller put and hold conforming goods at the buyer's disposition. M.C.L.A. 440.2503(1); M.S.A. 19.2503(1). The term "conforming goods" has been used to refer to goods offered in fulfillment of a contract even if there is a defect when the goods are measured against the specific contract obligation. See, comment 1, M.C.L.A. 2503(1); M.S.A. 19.2503(1). Delivery of nonconforming goods constitutes tender of delivery. See Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc., 212 Mich.App. 522, 525 n.2 (1995). (Under the UCC's statute of limitations, an action accrues when the non-conforming goods are delivered, not when the defect is discovered).

Plaintiff argues in response that its UCC claims are not time barred because the applicable statute of limitations was tolled until the Shepards discovered the dangerous propensity of the EON product. Safeco cites Moll v. Abbott Laboratories, 444 Mich. 1, 11-13 (1993) in support of that assertion. The decision in Moll, however, pertained to the delivery of pharmaceutical products, and the holding is specific to such products. While it is true that courts have applied a "discovery rule" to toll the running of a statute of limitations until the purchaser actually discovered the alleged defect, such rulings are exceptions to the general rule as stated in M.C.L.A. 400.2725(1). Plaintiff has cited no case other than Moll in support of its position that a discovery rule should be applied in this case. "Without a warranty extending to the future performance of the subject goods, a cause of action has been determined to accrue upon tender of delivery. In addition, the Michigan Supreme Court has specifically determined that the UCC 'recognizes no discovery rule.'" Rembrandt Construction, Inc. v. Butler Mfg. Co., 2006 WL 3375249 (Mich.App.). There is no evidence that Defendant made any oral or written representation which might warrant the application of a discovery rule.

The limited warranty extended by Defendants as to its EON product explicitly declared that CPI made no representation concerning the merchantability of its product or its fitness for any particular use. Rather, the warranty stated:

> CPI makes no warranty concerning the merchantability or fitness for a particular purpose with respect to the EON product (other than as described in this warranty certificate), and CPI shall not be liable for incidental, special, consequential or other similar damages arising out of any breach of this warranty. (Exhibit 4 to Defendants' Motion).

It is undisputed that Plaintiff's subrogors took possession of the EON product no later than June 10, 2002. There is no dispute that the alleged fire loss occurred on or about February 28, 2006. This action was filed on October 1, 2007. Accordingly, I conclude that the applicable statute of limitations expired as to UCC claims prior to the filing of the Complaint, and Defendants' Motion for Summary Judgment as to Count 2 should be granted.

### 3. <u>Count III</u>

Count III of the Complaint asserts a claim under the Michigan Consumer Protection Act ("MCPA"). M.C.L.A. 445.900 <u>et seq.</u> Defendants' Motion challenges Safeco's standing to bring suit under that statute.

Defendants argue that the MCPA provides a private cause of action to "a person who suffers loss as a result of a violation of this act . . .." CPI cites <u>Zine v. Chrysler Corp.</u>, 236 Mich.App. 261 (1999) for the proposition that the intent of the act is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." Defendants further cite <u>Jackson County Hog Producers v. Consumer Power Co.</u>, 234 Mich.App. 72 (1999) in maintaining that "every word or phrase in the statute should be accorded its plain and ordinary meaning, taking into account the

context in which the words are used." The defense argument is that "Safeco did not suffer any loss because of any violation of the MCPA alleged in this Complaint." On that basis, Plaintiff's standing to assert a claim under the Act is challenged.

Whether a party has standing is a question of law. <u>Rohde v. Ann Arbor Public Schools</u>, 265 Mich.App. 702, 705 (2005). Where a party's claim is governed by statute, the party must have standing as bestowed by the statute. <u>46th Circuit Trial Court v. Crawford Co.</u>, 266 Mich.App. 150, 177 (2005), rev'd in part on other grounds, 477 Mich. 921 (2006). CPI argues that the statute does not expressly grant standing to a third party subrogee. I find the argument unpersuasive.

While CPI's statements regarding the language of the MCPA, and the general rules of statutory construction, are accurate, there is judicial authority for the view that standing under the act is more expansive than Defendants admit. In <u>Labatt Ltd. v. Molson Breweries</u>, 853 F.Supp. 965 (E.D. MI 1994) this court (Judge Cohn) ruled that a corporate plaintiff had standing under the MCPA to sue a business competitor on a claim of unfair trade practices even though it was not a consumer of the defendant's products. The decision was based upon an analysis of the policies underlying the statute, as applied by various courts.

> Implicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events. Allowing a competitor to bring suit under a statute designed ultimately to protect the interests of consumers is not a novel approach to enforcement, and is routine, for instance, in actions under the Lanham Act. 15 U.S.C. §1125(a).

*       *       *

The MCPA addresses in part the same policy as §43(a) of the Lanham Act, and that policy is equally well served by allowing suit to be brought under the Act by business competitors. No persuasive authority holds otherwise, and nothing in the text of the statute suggests an intention on the part of the legislature to limit to consumers the right of action created under the MCPA. As Labatt points out, individual consumers who make mistaken purchases based on deceptive trade practices are unlikely to file suit for consumer fraud.

Labatt v. Molson, 853 F.Supp. at 970. A similar conclusion was reached by the United States District Court for the Western District of Michigan in Action Auto Glass v. Auto Glass Specialists, 134 F.Supp. 2nd 897 (W.D. MI 2001). As Plaintiff has paid its subrogors the full value of the property allegedly lost as a result of their use of Defendants' product, there is little doubt that Safeco has "a significant stake in the events" giving rise to this action. Furthermore, I agree with Plaintiff that, under Michigan law, an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy. Yerkovich v. AAA, 461 Mich. 732, 737 (2000). A subrogee "stands in the shoes in the subrogor and, by virtue of its payment to its policy holders, Safeco has the right to pursue all claims which would have been available to them. It is unlikely that the Shepards, having been fully reimbursed for their losses, would attempt to assert their rights as consumers against CPI. I am satisfied, therefore, that the policy of the act would be furthered, and certainly not violated, by this action on Safeco's part. Therefore, I recommend that Defendants' Motion be denied as to Count III, except as it pertains to Plaintiff's punitive damages claim.

### 4.  Punitive Damages Claim

CPI's Motion challenges the legal basis for an award of punitive damages arising from the alleged violation of the MCPA. In its Response to the Motion, Plaintiff declared

that it does not wish to pursue punitive damages in this case. That position was reasserted by Plaintiff's counsel at the oral argument. Accordingly, Defendants' Motion should be granted as to Plaintiff's original punitive damages request.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer<br>
DONALD A. SCHEER<br>
UNITED STATES MAGISTRATE JUDGE

DATED: July 28, 2008

**CERTIFICATE OF SERVICE**

I hereby certify on July 28, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 28, 2008. **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217